GEO. W. PARKER *v.* E. T. CLARK, SURVIVOR, ETC.

CONTRACT. *Plantation supplies. Crops raised on separate places. Conflicting claims.*
An arrangement whereby a party pledges to one supply man the entire crop of cotton, less the rent, to be raised by him on a certain piece of land, does not preclude him from making a subsequent arrangement with another party for additional supplies for another and different piece of land, unless in making the subsequent arrangement he violates an express obligation to the first supply man; and instructions indicating that an obligation existed to notify the first supply man of the subsequent arrangement are erroneous and should not be given unless supported by evidence.

APPEAL from the Circuit Court of Yazoo County.

HON. T. J. WHARTON, Judge.

In January, 1882, Parker, the appellant, with one McGee, came to the store of the appellee, Clark, and brought with them a written lease by which McGee was to pay Parker twenty-five bales of cotton as rent for two hundred and twenty acres of the "Ivanhoe Plantation," in Yazoo County, for the year 1882. Clark was requested by McGee and Parker to furnish McGee with supplies for the year to carry on his farming operations on said land. And to induce him to do so, McGee, in the presence of Parker and others, pledged to Clark his entire crop of cotton to be raised on the two hundred and twenty acres, less the rent. At the same time Clark and his chief clerk signed the lease as witnesses. There is some testimony to the effect that at the time of the above arrangements Parker made some statements about not wishing to make any advances on the "Ivanhoe Plantation" and that his rent was only twenty-five bales of cotton. Clark made the advances, as agreed.

Subsequently, without the knowledge of Clark, Parker rented to McGee seventy-three acres of land, in addition to the above, at sixty-five pounds of lint cotton per acre, and advanced him supplies on the same. McGee cultivated both tracts of land, and there is no proof of any attempt on his part or Parker's at any fraud or concealment of facts or attempt by the subsequent lease to invade the rights of Clark. The lease of the seventy-three acres was verbal and separate and distinct from the lease of the two hundred and twenty acres.

On the 23d of February, 1883, Clark sued out an attachment against McGee upon the ground that he was disposing of his property with intent to defraud his creditors and was converting it into money with intent to place it beyond their reach. The attachment was levied on forty-four bales of cotton and other personal property. Judgment on the attachment was rendered in favor of Clark. Twenty-five bales of cotton were released to Parker, who now interposed a claim for twenty bales additional on account of rent and supplies for the seventy-three acres rented to McGee, as above set forth. The jury rendered a verdict against Parker, who appeals to this court and assigns for error the granting of instructions for the plaintiff, which were as follows: (3) " The court instructs the jury that if they believe from the evidence that Parker induced Clark to promise supplies to McGee, and that McGee was to pay twenty-five bales of cotton, and afterward or before a verbal contract or agreement was made between Parker and McGee, by which McGee was to pay a greater amount, and which verbal contract Parker willfully concealed from Clark in order that Clark might or should continue to make advances to McGee, that fact is a circumstance to be considered by the jury in determining whether a fraud was practiced by Parker upon Clark; and if from the evidence they should find that there was such a verbal contract and that it was so concealed from Clark, then the lien of Parker for supplies advanced under such verbal contract is inferior to that acquired by Clark by the levy of the attachment." (4.) " The court instructs the jury that if they believe from the evidence that Parker, by concealment of the amount of rent to be paid by McGee to him, held out and

offered an inducement to Clark to furnish him (McGee) for supplies in 1882, then the law is for plaintiff Clark and the jury will so find." (5.) " The court instructs the jury that fraud vitiates everything, and if they believe from the evidence that Parker willfully and intentionally misled Clark as to amount of rent to be received, so that Clark was induced to give credit to McGee, and did give him credit, then the law is for plaintiff, and the jury will so find." (6.) " The court instructs the jury that fraud need not be directly proven, but may be presumed from facts and circumstances, and if they believe from the facts and circumstances proved in this case that Parker willfully concealed from Clark the amount of rent to be paid, and thus induced Clark to part with his goods to McGee, then the law is for the plaintiff, and they will so find." (7.) " The court instructs the jury that if they believe from the evidence that defendant and Parker, the landlord of defendant, induced plaintiff to furnish supplies on the basis that defendant was to pay Parker twenty-five bales of cotton, and afterward a verbal agreement was made by which defendant was to pay a greater rent, which was unknown to plaintiff, then this was a fraudulent act on the part of defendant to hinder, delay, and defraud plaintiff, and if the jury so believe they will find for plaintiff." (8.) " The court instructs the jury that if they believe from the evidence that Parker and McGee induced plaintiff, E. T. Clark, to furnish supplies to defendant, and that McGee was to pay twenty-five bales of cotton, and afterward or before a verbal agreement was made by which McGee was to pay a greater rent, which was unknown to plaintiff (Clark), and which Parker willfully concealed from Clark in order that Clark might continue to make advances, then this was an act of fraud on the part of Parker, and if the jury so believe, then they will find for plaintiff."

*Hudson, Hudson & Holt*, for the appellant.

1. According to the testimony of appellant and his tenant, McGee, which is undisputed, there was a verbal lease entirely separate and distinct from the lease of two hundred and twenty acres for twenty-five bales of cotton to seventy-three acres of land. It is the uncontradicted testimony that the seventy-three acres of land were

cultivated by McGee, as well as the two hundred and twenty acres, and that appellee passed through this seventy-three acres frequently during the year and had every opportunity to know that McGee was cultivating it, and no doubt did know it, yet he seeks to avoid the rent bill of Parker (appellant) on the ground of fraud, deception, etc., when there is nothing in the testimony to prove anything of the kind as to the rent of this land, unless the very carelessness, inattention, and want of observance in appellee would prove fraud, etc. There was no guaranty or statement made by appellant that he would not lease additional land to McGee during that same year.

2. The seventh and eighth instructions given for the appellee are clearly improper. Parker rents to McGee and shows the lease to Clark, and according to the theory of plaintiff induces Clark to furnish McGee on the implied understanding that he would waive his landlord's lien for supplies in his favor. Afterward Parker rents another seventy-three acres to McGee, and in this suit attempted to recover rent for the same, and the court instructed the jury that if such lease was made and Clark had no notice of it they must find for the defendant. It did not say if it was fraudulent they should so find, but the court usurped the province of the jury and decided that it was fraudulent and instructed them if such a lease was made to find for the defendant; not to find for defendant as to that particular part of the rent, but as to all—not only that part, but the other. This was error, we think, and must have misled the jury, who, being common men, do not understand how "to construe each instruction in the light of the other," but accept usually each one as containing a clear statement of the legal rights of the party without reference to any other. The instructions given for appellee are unsupported by any evidence in the case.

*Robt. Bowman*, for the appellee.

The preponderance of testimony in this case shows that there was a fraudulent connivance between Parker and McGee to get Clark to furnish McGee. The lien of Parker as landlord was created alone by law, but stood on no higher ground than any other

lien which could be created under the law. Fraud vitiates every contract, however solemn, both at law and equity. *Davidson* v. *Moss,* 5 How. 673; *Halls* v. *Thompson,* 1 S. & M. 443; *Harrison* v. *Ransom,* 24 Miss. 504; *Pearson* v. *Nesbit,* 32 Miss. 180. Clark sustained actual damage by the acts of Parker and McGee. He parted with his goods and money under the inducement held out by them that Parker was to receive only twenty-five bales of cotton rent. This brings this case within the rule laid down in *Harrison* v. *Ransom,* 24 Miss. 508. No lien for an investment can arise in favor of a party guilty of fraud. The fraudulent intent vitiates the entire contract. *Stovall* v. *Mechanics' Bank,* 8 S. & M. 316; *McClosky* v. *Gordon,* 26 Miss. 261. The instructions of the court below were all based on the principles annunciated in the above adjudications. There was ample and sufficient testimony before the jury to sustain the plaintiff's case.

*J. C. Prewett,* on the same side.

1. There is but one question involved, and that is whether or not Parker has defrauded Clark. It seems to me he has. Parker was the landlord, Clark was the merchant and supply man, and McGee was the tenant. Parker induced Clark to advance liberally to McGee on Parker's assurance that McGee only owed him twenty-five bales of cotton as rent. Clark had shown a written lease, and even requested to become a witness to it along with Ball, his clerk—all to impress on Clark's mind the idea that only twenty-five bales were due. At the end of the year Parker claims his twenty-five bales and gets them after Clark has attached (which attachment has been sustained), sets up a claim to the rent of seventy-three acres of land in addition and a supply bill of over three hundred dollars, of all which Clark had no notice, according to the evidence.

2. Parker had bought a portion of the White Place, and did not want to involve himself in running the Ivanhoe Place; he, therefore, induced Clark to believe that he (Parker) was only entitled to twenty-five bales of cotton as rent, and that Clark would get the residue of McGee's crop for his supply bill—McGee having pledged his crop, less the rent, to Clark.

3. There was a clear conflict in the evidence. The jury have settled that in favor of Clark, and on a large preponderance of evidence, and this court will not disturb it.

CAMPBELL, C. J., delivered the opinion of the court.

The proposition that Parker should not be allowed to claim any of the products of the two hundred and twenty acres leased on the 1st January, 1882, except the twenty-five bales of cotton as rent, as against Clark & Bro., if it be true that he induced them to credit McGee on the basis of an agreement that they were to have all of the crop except the rent, is indisputable, for no one should profit by an act of bad faith. But an arrangement about the two hundred and twenty acre field did not preclude Parker and McGee from another and different one as to seventy-three acres of other land, and we are unable to see that any obligation rested upon Parker to communicate to Clark the fact of a lease of the additional tract, and so the court below instructed the jury. Nor can we see how Clark could suffer any disappointment of his expectations, so far as the products of the seventy-three acres are involved, for he testified he did not know they were cultivated by McGee, and therefore he must have extended credit alone with reference to the crops grown on the two hundred and twenty acre tract. It is not shown by the record where the twenty bales of cotton in controversy were raised, whether on the two hundred and twenty acres, to which Clark had a right to look and did look for pay, or on the seventy-three acres which he did not know his customer was working.

We approve the instructions given for the claimant.

The third, fourth, fifth, and sixth instructions for the plaintiff, in speaking of "amount of rent," are calculated to mislead, as suggesting the idea of a change of the terms of the lease of 1st January, whereas there is nothing in the evidence to support this. The evidence is that a new and different contract was made about other land, and there was no change of the terms as to the lease of which Clark knew. The seventh and eighth instructions for the plaintiff are more clearly objectionable, as more distinctly containing the proposition just mentioned as constituting the vice of the four criti-

32

cised.    It seems probable that the court below only intended to in-
struct the jury in accordance with the proposition with which this
opinion begins; but the instructions mentioned go beyond this and
convey the idea that the lease of 1st January, 1882, disabled Parker
from leasing other land to McGee and advancing him supplies for
it, because the result was an increase of the amount of rent to accrue
to him by reason of the increased area rented.    There might have
been such a contract between Clark and Parker as to disable the
latter from dealing with McGee without the knowledge and con-
sent of Clark; but the testimony of Clark himself does not show
such contract.    The expressions, " willfully concealed," " conceal-
ment of the amount of rent," " willfully and intentionally mislead,"
" willfully concealed from Clark the amount of rent to be paid,"
and " willfully concealed from Clark in order that Clark might con-
tinue to make advances," in the third, fourth, fifth, sixth, and eighth
instructions for the plaintiff, seem unwarranted by any evidence
contained in the record.

*Judgment reversed and new trial awarded.*